IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| BRANDON L. ROBERTSON, ) | Civil Action No. 7:13-cv-00560 | |
|     Plaintiff, ) | | |
| ) | | |
| v. ) | MEMORANDUM OPINION | |
| ) | | |
| MATTHEW ROBERTS, et al., ) | By: Hon. Michael F. Urbanski | |
|     Defendants. ) | United States District Judge | |

Brandon L. Robertson, a Virginia inmate proceeding pro se, filed a verified complaint, pursuant to 42 U.S.C. § 1983, naming as defendants correctional officers ("C/O") Matthew Roberts and Brian Hughes of the Wallens Ridge State Prison ("WRSP"). Defendants filed a motion for summary judgment, and Plaintiff responded, making the matter ripe for disposition. After reviewing the record, the court grants Defendants' motion for summary judgment because Plaintiff failed to exhaust available administrative remedies.

**I.**

Plaintiff and another inmate began fighting in the WRSP dining hall on December 5, 2012. C/O Roberts and his K-9 approached Plaintiff and the other inmate and ordered them to lie face down.

Plaintiff alleges that, despite complying with the order to lie down and all subsequent orders, C/O Roberts and C/O Hughes used excessive force against him while he lay on the floor. Specifically, C/O Roberts incited the K-9 to attack Plaintiff while C/O Hughes placed his foot on the back of Plaintiff's head, saying, "Sic him!" and "Eat him up!" When the K-9 stopped attacking, C/O Roberts allegedly threw the K-9 on Plaintiff's back and also incited it to bite Plaintiff.

In contrast, C/O Roberts avers that Plaintiff did not respond to orders to lie face down on the floor and another officer's use of pepper spray. C/O Roberts approached the fight while ordering Plaintiff to stop fighting and warning him that the K-9 would be used if he failed to comply. Plaintiff did not comply, and the K-9 was released and latched onto Plaintiff's left forearm. Plaintiff proceeded to lie down on the floor, and C/O Roberts twice ordered Plaintiff to place both hands out to his side so C/O Roberts could see them. Plaintiff complied with the second order, and the K-9 then released Plaintiff per C/O Roberts' command. C/O Hughes avers that he did not step on Plaintiff's head or order the K-9 to attack Plaintiff.

Plaintiff was restrained and taken to the medical department. Plaintiff sustained two dog bites on the left forearm. The first wound was a four-centimeter open wound with muscle and subcutaneous fat hanging out and was treated with three simple sutures. The second wound was a two-and-a-half-centimeter open wound with muscle and subcutaneous fat hanging out and was treated with a single suture. Plaintiff also sustained various abrasions and wounds on his back, left shin, and right arm. Plaintiff was placed in a segregation cell immediately after the incident and until he was transferred to the Sussex II State Prison ("Sussex II") on January 16, 2013.

## II.

Defendants argue that Plaintiff failed to exhaust his administrative remedies. Plaintiff argues in response that he tried to file a grievance while at WRSP but staff refused to process it. After reviewing the record, the court finds that Plaintiff did not exhaust available administrative remedies.

The Prison Litigation Reform Act provides that "[n]o action shall be brought with respect to prison conditions under [§ 1983] . . ., by a prisoner confined in any jail, prison or other

correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The exhaustion requirement is mandatory and "applies to all inmate suits about prison life[.]" Porter v. Nussle, 534 U.S. 516, 524, 532 (2002). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." Woodford v. Ngo, 548 U.S. 81, 90 (2006). When a prison provides an administrative grievance procedure, the inmate must file a grievance raising a particular claim and pursue it through all available levels of appeal to "properly exhaust." Id. However, "an administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008). "[W]hen prison officials prevent inmates from using the administrative process . . ., the process that exists on paper becomes unavailable in reality." Kaba v. Stepp, 458 F.3d 678, 684 (7th Cir. 2006). An inmate's failure to exhaust is an affirmative defense that a defendant has the burden to prove. Jones v. Bock, 549 U.S. 199, 216 (2007). Once a defendant presents evidence of a failure to exhaust, the burden of proof shifts to the plaintiff to show, by a preponderance of the evidence, that exhaustion occurred or administrative remedies were unavailable through no fault of the plaintiff. See, e.g., Tuckel v. Grover, 660 F.3d 1249, 1254 (10th Cir. 2011).

Virginia Department of Corrections ("VDOC") Department Operating Procedure ("OP") 866.1, the "Offender Grievance Procedure," provides the administrative remedies for inmates to resolve complaints, appeal administrative decisions, and challenge policies and procedures.[1] The process provides correctional administrators means to identify potential problems and, if necessary, correct those problems in a timely manner.

---

[1] All issues are grievable except issues about policies, procedures, and decisions of the Virginia Parole Board; disciplinary hearing penalties and/or procedural errors; state and federal court decisions, laws, and regulations; and other matters beyond the VDOC's control.

3

An inmate must make a good faith effort to informally resolve the issue by submitting an informal complaint form. If the issue is not informally resolved, the inmate must file a grievance within thirty calendar days from the date of the occurrence or incident. Grievances received by a facility's grievance office are dated/date stamped on the working day received. Notably, "[a] Grievance Receipt will be issued [to the inmate] within two working days from the date of receipt" if the grievance meets the criteria for acceptance. OP 866.1 § VI(B)(2). If it does not meet the criteria, the grievance is returned to the inmate within two working days from the date of receipt with an explanation why it was rejected at intake.[2] Id. at § VI(B)(3).

A properly-filed grievance may receive three levels of review. A facility's warden or superintendent conducts the first, "Level I" review. If the warden or superintendent does not affirm the grievance within thirty days, the inmate may consider the grievance denied and may file an appeal to Level II, which is usually done by a regional ombudsman. For most issues, Level II is the final level of review. For the few issues appealable to Level III, the Chief of Corrections Operations or the Director of the VDOC conducts the final administrative review. Copies of all processed grievances and appeals are kept in the inmate's grievance file.

Plaintiff avers that he filed an informal grievance on December 11, 2012, which was six days after the incident, describing C/O Roberts' and C/O Hughes' alleged use of excessive force. Because Plaintiff was placed in segregation immediately after the incident until his transfer to Sussex II, he could not deliver an informal complaint or a grievance to the institutional mail box himself and had to rely on WRSP staff to retrieve the completed forms from his door and send them to the grievance office. Plaintiff never received a response to the informal complaint.

---

[2] If the inmate wants a review of the intake decision, the inmate may send the grievance to a regional ombudsman within five days of the inmate's receipt. There is no further review of the intake decision.

On about December 25, 2012, Plaintiff placed both a regular grievance about the incident and a request form on his cell door for staff to retrieve and deliver.[3] Plaintiff did not receive a response to the regular grievance, and he was transferred to Sussex II on January 16, 2013. On January 23, 2013, Plaintiff wrote a letter to the VDOC's Special Investigative Unit, which was forwarded to the Warden of WRSP. Plaintiff mailed a regular grievance directly to the Warden of WRSP on February 16, 2013, but that grievance was rejected at intake as untimely because Plaintiff filed it more than thirty days after the incident occurred on December 5, 2012.

Plaintiff wrote two more letters to the Special Investigative Unit, which forwarded the letters to the Warden of WRSP. The Warden replied to all three letters on August 7, 2013, stating that an investigation "found no merit" to Plaintiff's allegations of excessive force. Plaintiff "appealed" the Warden's letter by forwarding it with a letter to a regional ombudsman, who never responded.

Plaintiff argues that he attempted to exhaust administrative remedies by placing the informal complaint and grievance forms on the cell door within the applicable time limits and that administrative remedies were not available to him because staff did not deliver or process the two completed forms. Plaintiff ignores the fact that OP 866.1 required the grievance coordinator[4] to send to Plaintiff proof of receipt within two days, either by a Grievance Receipt that notes the grievance was properly filed or by returning the grievance with an explanation why it was rejected at intake. Plaintiff had not received anything back from the grievance coordinator within two days after he left the grievance on his cell door. Instead of filing a request form like he had done before, Plaintiff did not communicate with any staff about the missing grievance or

---

[3] Plaintiff explained in the request form that he previously placed an informal complaint on his door for delivery but never received a response from staff.

[4] A grievance coordinator is also known as an institutional ombudsman.

informal complaint, and the grievance policy does not relieve Plaintiff of all the responsibilities required of him due to an unexplained discrepancy in the delivery or processing of a grievance form. OP 866.1 allowed Plaintiff to file more grievances until one reached the grievance office within thirty days of the incident, but Plaintiff, instead, delayed refiling the grievance until February 2013, which was after the thirty-day grievance period expired. Thus, Plaintiff had administrative remedies available to him within thirty days of the incident, but he failed to pursue them.[5] See Jones, 549 U.S. at 219 (recognizing the exhaustion process allows a prison to address complaints about the program it administers before being subjected to suit, reduces litigation to the extent complaints are satisfactorily resolved, and improves litigation that does occur by leading to the preparation of a useful record). Accordingly, the court grants Defendants' motion for summary judgment because Plaintiff failed to exhaust the administrative remedies available to him.

### III.

For the foregoing reasons, the court grants Defendants' motion for summary judgment.

Entered: November 7, 2014

*Michael F. Urbanski*

Michael F. Urbanski
United States District Judge

---

[5] The court notes that Plaintiff's communications to the Special Investigations Unit were outside the scope of OP 866.1. See Moore, 517 F.3d at 725 ("[A] prisoner does not exhaust all available remedies simply by failing to follow the required steps so that remedies that once were available to him no longer are.").